1

2

3

4

5                        IN THE UNITED STATES DISTRICT COURT

6                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    LAZARUS ORTEGA,                              No. C-07-04436 EDL

9              Plaintiff,                         **ORDER DENYING DEFENDANTS'**
                                                  **MOTION TO DISMISS**
10      v.

11   DEPUTY MICHAEL GIAMALVO, et al.,

12             Defendants.
     _____/

13

14          Plaintiff Lazarus Ortega is a prisoner who alleges that he was subjected to excessive force by

15   Sheriff's Deputy Giammalvo at Santa Rita Jail in Alameda County on October 12, 2004.  Plaintiff is

16   represented by counsel.  On May 3, 2011, Defendants filed a motion to dismiss, arguing that

17   Plaintiff failed to exhaust his administrative remedies.  Defendants' motion to dismiss was fully

18   briefed.  For the reasons stated at the June 14, 2011 hearing and in this Order, Defendants' motion to

19   dismiss is denied.

20   **Legal Standard**

21          The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996)

22   ("PLRA"), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to

23   prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any

24   jail, prison, or other correctional facility until such administrative remedies as are available are

25   exhausted."  42 U.S.C. § 1997e(a).  Here, there is no dispute that Plaintiff is a prisoner for purposes

26   of the PLRA and that he brought this action with respect to prison conditions.  The issue in this case

27   is whether Plaintiff exhausted his available administrative remedies.

28          Exhaustion is mandatory.  Woodford v. Ngo, 548 U.S. 81, 84 (2006) (citing Booth v.

     Churner, 532 U.S. 731, 739 (2001)).  "Prisoners must now exhaust all 'available' remedies, not just

United States District Court
For the Northern District of California

those that meet federal standards."  Id.  The PLRA's exhaustion requirement requires "proper

exhaustion" of available administrative remedies.  Id. at 93.

Nonexhaustion under § 1997e(a) is an affirmative defense.  Jones v. Bock,

549 U.S. 199, 217-18 (2007); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Defendants

have the burden of raising and proving the absence of exhaustion, and inmates are not required to

specifically plead or demonstrate exhaustion in their complaints.  Jones, 549 U.S. at 215-17.  A

movant claiming lack of exhaustion must demonstrate that pertinent relief remained available,

whether at unexhausted levels or through awaiting the results of the relief already granted as a result

of that process.  Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005).  Although the exhaustion

requirement is mandatory, see Booth, 532 U.S. at 739, it is not jurisdictional, see Wyatt, 315 F.3d at

1117 n.9; Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) (noting that clear majority of courts

has held that PLRA exhaustion is not jurisdictional requirement).

A nonexhaustion claim should be raised in an unenumerated Rule 12(b) motion rather than in

a motion for summary judgment.  Wyatt, 315 F.3d at 1119.  In deciding such a motion – a motion to

dismiss for failure to exhaust nonjudicial remedies – the court may look beyond the pleadings and

decide disputed issues of fact.  Id. at 1119-20 (citing Ritza v. International Longshoremen's &

Warehousemen's Union, 837 F.2d 265, 369 (9th Cir. 1998)).  If the court concludes that the prisoner

has not exhausted nonjudicial remedies, the proper remedy is dismissal without prejudice.  Id. at

1120 (". . . if the district court looks beyond the pleadings to a factual record in deciding the motion

to dismiss for failure to exhaust - a procedure closely analogous to summary judgment - then the

court must assure that [the plaintiff] has fair notice of his opportunity to develop a record.").  A

district court's factual determinations are reviewed for clear error.  Ritza, 837 F.2d at 369; see also

Easley v. Cromartie, 532 U.S. 234, 242 (2001) (stating that when reviewing a district court's

decision for clear error, an appellate court must ask whether "on the entire evidence," it is "left with

the definite and firm conviction that a mistake has been committed.").

The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise

procedurally defective administrative grievance or appeal."  Woodford v. Ngo, 548 U.S. 81, 84

(2006).  "The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted'

1    to mean what the term means in administrative law, where exhaustion means proper exhaustion."

2    Id. at 92.  Therefore, the PLRA exhaustion requirement requires proper exhaustion.  Id.  "Proper

3    exhaustion demands compliance with an agency's deadlines and other critical procedural rules

4    because no adjudicative system can function effectively without imposing some orderly structure on

5    the course of its proceedings."  Id. at 90-91 (footnote omitted).  Compliance with prison grievance

6    procedures is all that is required by the PLRA to "properly exhaust."  Jones v. Bock, 549 U.S. 199,

7    217-18 (2007).

8            Failure to exhaust may be excused where a prisoner takes reasonable and appropriate steps to

9    exhaust his claims and was precluded from doing so, not through any fault of his own but by the

10   mistake of a prison official.  See Sapp v. Kimbell, 623 F.3d 813, 823 (9th Cir. 2010) (". . . we hold

11   that improper screening of an inmate's administrative grievances renders administrative remedies

12   "effectively unavailable" such that exhaustion is not required under the PLRA. If prison officials

13   screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary

14   sequence of appeals, and administrative remedies are therefore plainly unavailable."); Nunez v.

15   Duncan, 591 F.3d 1217, 1224-25 (9th Cir. 2010) (noting instances of exceptions to the exhaustion

16   requirement in other circuits, e.g., where prison officials erroneously told a prisoner that he must

17   wait until an investigation is complete  before filing a grievance and where a prisoner was threatened

18   with retaliation by prison officials if he filed a grievance); Ngo v. Woodford, 539 F.3d 1108, 1110

19   (9th Cir. 2008) ("It is unclear whether we can read exceptions into the PLRA's exhaustion

20   requirement. Even if we could, no such exception applies here. Ngo hasn't shown that administrative

21   procedures were unavailable, that prison officials obstructed his attempt to exhaust or that he was

22   prevented from exhausting because procedures for processing grievances weren't followed.")

23   (citations omitted).  For example, if a prisoner files a grievance and receives no response within the

24   time allotted for a response under the grievance procedure, the exhaustion requirement may be

25   satisfied. Gregory v. PHS, Inc., 2001 WL 1182779, *2 (D. Del. Sept. 21, 2001) (holding that

26   prisoner satisfied the exhaustion requirement when he filed a grievance and received no response for

27   such a long period of time that "it is safe to assume [it] exceeded the amount of time allowed for

28   prison authorities to respond under said grievance procedure"); cf. Jackson v. District of Columbia,

3

1    254 F.3d 262, 269 (D.C. Cir. 2001) (holding that prisoner who never received a response to his

2    first-level grievance failed to satisfy exhaustion requirement because time period for prison response

3    had not expired before he filed suit).

4            Here, Plaintiff argues that the Court must draw all inferences from the evidence in Plaintiff's

5    favor.  See, e.g., Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (stating the rule that on a motion

6    to dismiss, the court must accept the allegations as true and construe the complaint liberally in favor

7    of the plaintiff).  The Court is not persuaded.  At the hearing, Plaintiff acknowledged that there was

8    no authority squarely so holding.  At the same time, Defendant acknowledged at the hearing that

9    there is no authority for drawing inferences in its favor.  Accordingly, there is no such "tiebreaker"

10   for determining disputes that hinge on credibility.

11   **Discussion**

12           In this case, the Court has been presented with two differing versions of events with respect

13   to Plaintiff's exhaustion of his available administrative remedies.  In his amended complaint,

14   Plaintiff alleged that he had exhausted available administration remedies by "originally filing a

15   grievance on October 13, 2004," and filing "another grievance several weeks later in early

16   November 2004."  Am. Compl. ¶ 15; see also Lau Decl. Ex. A (Plaintiff's deposition) at 11, 17, 78

17   81.  He alleged that "both grievances never received log tracking numbers."  Id.  Plaintiff testified

18   that he never received a response to the grievances and that he asked the floor staff about the lack of

19   any response.  Lau Decl. Ex. A at 11-12.  Plaintiff then wrote to the District Attorney's office in

20   January 2005 informing the office about the excessive force and about the fact that Plaintiff had

21   written grievances which had not been processed.  Id.; Stocker Decl. Ex. A (letter from Plaintiff to

22   District Attorney's office received on January 20, 2005).

23           Defendants argue that Plaintiff only asked for "write-ups" in the January 2005 letter, which

24   refer to disciplinary steps, not grievances.  Stocker Decl. Ex. A.  However, Plaintiff's letter states

25   that he wrote two grievances and had not received any response to those grievances, and asks why

26   this occurred.  Id. ("I was assaulted by Deputy Giammalvo on October 11th and he split open my

27   skull and gave me six stitches.  I have written (by the help of jailhouse attorneys for the so and so

28   years) two grievances since that time and have received no answer why is that.").  Defendants also

**United States District Court**
For the Northern District of California

4

**United States District Court**
For the Northern District of California

1  argue that the letter was for the purpose of pressing charges against Giammalvo.  However, the letter

2  also addresses the grievances.  <u>Id.</u>  Thus, only about three months after Plaintiff claims that he filed

3  two grievances that Defendants failed to process, and almost two years before he filed the first

4  lawsuit arising out of this incident in November 2006, Plaintiff asserted that he had filed grievances

5  and asked the District Attorney to find out why he had gotten no response.

6  Plaintiff alleged that the District Attorney's office forwarded his January 2005 letter to the

7  Internal Affairs department.  Am Compl. ¶ 15; <u>see also</u> Stocker Decl. Ex. B (transmittal letters to

8  Internal Affairs).  Plaintiff alleged that on April 26, 2005, the Internal Affairs department concluded

9  their review and decided not to investigate.  Am. Compl. Ex. A.  Defendants submitted a copy of a

10  letter from Plaintiff dated April 18, 2005 that was addressed to the Internal Affairs department.

11  Stocker Decl. Ex. C.  In that letter, Plaintiff asked for copies of grievances, and stated that he had

12  exhausted his administrative remedies.  <u>Id.</u>  Plaintiff did not provide copies of any grievances that he

13  filed in connection with this incident.

14  Plaintiff alleged that he then filed a case regarding the alleged excessive force, but that Judge

15  Armstrong dismissed that case without prejudice based on the failure to exhaust administrative

16  remedies on April 24, 2007.  Am. Compl. ¶ 15.  Plaintiff alleged that he then sent a letter to the

17  Alameda County Sheriff's Department with a copy of the court's dismissed order, requesting a

18  grievance form from the Sheriff's Department.  <u>Id.</u>  Plaintiff did not file a copy of this letter.

19  Plaintiff alleged that the Sheriff's Department responded on May 21, 2007, stating that it would not

20  conduct an investigation, and refusing to send a grievance.  <u>Id.</u>; Ex. D.

21  The Santa Rita Jail grievance policies in effect in 2004 provided that a prisoner should first

22  attempt to informally resolve the problem with the housing unit deputy or other supervisor, and if

23  that was unsuccessful, the prisoner could submit a grievance.  Foster Decl. ¶ 1.  The grievance form

24  would be provided to the inmate by the housing unit deputy who originally attempted an informal

25  resolution of the grievance.  <u>Id.</u>  The deputy who provided the form would date and sign the

26  grievance form and a control or tracking number would be drawn.  <u>Id.</u>  A copy would be provided to

27  the inmate at that time.  <u>Id.</u>  The form would then be forwarded to the Grievance Unit at Santa Rita

28  Jail for processing.  <u>Id.</u>  The deputy named in the grievance would be asked to respond.  <u>Id.</u>  The

United States District Court
For the Northern District of California

grievance would then be investigated.  Id.  When a disposition was reached, a written response and an explanation would be provided to the inmate on a form which would be forwarded to the inmate for review and signature.  Id. ¶ 2.  Then, the policies provided for various appeals, until the decision was considered final.  Id. ¶¶ 2-4.  Instructions on how to properly submit a grievance are given to all prisoners when they arrive at the jail.  Id. ¶ 5.

Plaintiff has a history of submitting grievances.  Plaintiff submitted three grievances in 2002, four in 2004 and six in 2005.  Foster Decl. ¶ 6; Ex. C, E-G.  According to Sergeant Foster, all grievances at the Jail are logged.  Foster Decl. ¶ 6.  None of Plaintiff's logged grievances involved Defendant Giammalvo.  Foster Decl. ¶ 7.  Of the four grievances in 2004, none of them has Defendant Giammalvo as the subject of the grievance, nor is he mentioned in any of the grievances.  Id.  Defendant Giammalvo did sign two of the extensions for two of the 2004 grievances.  Id.

In Plaintiff's view, the absence of his grievances confirms that prison officials either disregarded or lost his grievances and failed to log them in violation of its procedures and in frustration of his ability to assert his rights, thereby excusing his failure to exhaust.  In Defendant's view, by contrast, the absence of the grievances in the tracking log and the evidence showing that Plaintiff was familiar with the grievance process show that he did not file the grievances against Giammalvo and failed to exhaust, and should not be excused from that failure.  Yet Defendants' evidence is equally consistent with either view -- that Plaintiff failed to submit grievances or that he submitted his grievances because he knew how to do it, but the grievances were misplaced.

Because the parties have offered evidence of competing versions of events, the Court is not able make credibility determinations to resolve the question of exhaustion based on this record.  See Roberts v. Salano, 2009 WL 1514440, at *2 (E.D. Cal. May 27, 2009) ("While the Court may resolve disputed issues of fact on an unenumerated 12(b) motion, it cannot assess the credibility of the parties' differing versions of what occurred.  The absence of evidence that an appeal was officially filed at the institutional level may indicate Plaintiff never filed the appeal, but it may also indicate that the appeal was discarded or ignored by staff, as Plaintiff contends.") (citations omitted); Bradley v. McVay, 2008 WL 495732, at *3 (E.D. Cal. Feb. 21, 2008) ("In a situation such as this in which the parties offer differing versions of events based on competing declarations, the issue is one

United States District Court
For the Northern District of California

1   of witness credibility and the Court cannot make that requisite assessment on a motion to dismiss.

2   The Court is not finding that plaintiff exhausted. Rather, at this juncture and on the record before it,

3   the Court simply cannot find that plaintiff failed to exhaust, and defendant's motion to dismiss must

4   be denied."); see also Barretto v. Smith, 2009 WL 1271984, at *7 (E.D. Cal. Mar. 6, 2009) ("Under

5   these circumstances, in which the parties offer competing declarations setting forth differing

6   versions of events, the court cannot make the necessary credibility determination to resolve the

7   exhaustion issue on a motion to dismiss.").

8          As one court observed in Sutherland v. Herrmann, 2010 WL 2303206, at *5 (E.D. Cal. June

9   7, 2010), where the defendant similarly relied on prison officials' declarations pointing to the

10  absence of records showing that the plaintiff in that case filed a timely appeal:

11         Moreover, to the extent that the court is able to harmonize the competing versions of
           the events, defendants' reliance on the declarations of the prison appeals coordinators
12         appears to be misplaced. If prison staff have disregarded or lost plaintiff's appeal, as
           plaintiff claims, then there would be no record of plaintiff's appeal in the databases on
13         which defendants rely. See Buchanan v. Santos, 2010 WL 1267353, at *5 (E.D.Cal.
           Mar.31, 2010) ("[W]hile the absence of evidence that a grievance was officially filed
14         may indicate [that] Plaintiff never submitted the grievance, it may also indicate that
           the grievance was discarded or ignored by staff, as Plaintiff contends."). In this
15         regard, defendants have not squarely refuted plaintiff's claim that he did in fact file an
           appeal on November 12, 2008. As noted above, defendants carry the burden of
16         raising and proving the affirmative defense of failure to exhaust. See Jones, 549 U.S.
           at 216; Wyatt, 315 F.3d at 1119.

17

18  Sutherland, 2010 WL 2303206, at *5.

19         The differing versions of events require the Court to make a credibility determination in

20  order to rule on this motion to dismiss.  The Court cannot make that determination on this record.

21  The Court is not finding that Plaintiff exhausted his administrative remedies.  Rather, the Court

22  cannot find that Plaintiff failed to exhaust based on this record.  Because Defendants bear the burden

23  of proof, Defendants' motion to dismiss is denied without prejudice.

24         **IT IS SO ORDERED.**

25  Dated: June 16, 2011

26                                                  _____
                                                    ELIZABETH D. LAPORTE
                                                    United States Magistrate Judge
27

28

7